[No. D050112. Fourth Dist., Div. One. Jan. 12, 2009.]

GAETANO PADUANO, Plaintiff and Appellant, v.
AMERICAN HONDA MOTOR COMPANY, INC., Defendant and
Respondent.

## COUNSEL

Michael E. Lindsey for Plaintiff and Appellant.

Mayer Brown and Donald M. Falk for Defendant and Respondent.

## OPINION

**AARON, J.—**

## I.

## INTRODUCTION

Appellant Gaetano Paduano appeals from a judgment of the trial court in favor of defendant American Honda Motor Company, Inc. (Honda). Paduano purchased a new 2004 Honda Civic Hybrid in June 2004, and subsequently became displeased with the fuel efficiency of the vehicle. Paduano was achieving approximately half of the Environmental Protection Agency's (EPA) fuel economy estimate that was disclosed on the federally mandated new car label. After Paduano was informed by a service employee at a Honda dealership that driving conditions affect the fuel efficiency of hybrid vehicles more than that of conventional vehicles, and that his Civic Hybrid could achieve higher fuel efficiency only if he significantly altered his driving habits, Paduano requested that Honda repurchase the vehicle from him. When Honda refused, Paduano filed this action in which he alleges one federal and two state law causes of action for breach of warranty, and two state law causes of action for deceptive advertising.

Honda filed a motion for summary judgment in which it argued that the federal Energy Policy and Conservation Act (EPCA; 42 U.S.C. § 6201 et seq.) preempts all of Paduano's claims. In the alternative, Honda maintained that summary judgment was appropriate because Paduano's claims

lack substance under California law. Specifically, Honda asserted that Paduano's warranty claims fail because there is no evidence that Honda warranted that Paduano would achieve a particular level of fuel economy. Honda further argued that there is no evidence that Paduano's vehicle suffers from any defect that would cause it to attain poor mileage. With regard to Paduano's claims of deceptive advertising, Honda asserted in its motion for summary judgment that its advertising was not, in fact, misleading. The trial court agreed with all of Honda's claims and granted the motion for summary judgment.

On appeal, Paduano contends that the trial court erred in concluding that federal law preempts his claims. He also argues that there remain triable issues of material fact with respect to all of his causes of action.

We conclude that the trial court correctly granted summary adjudication in favor of Honda on Paduano's warranty claims. We therefore affirm the portion of the trial court's judgment pertaining to those claims. However, with respect to Paduano's claims of deceptive advertising, we conclude that summary adjudication was not appropriate. Paduano raises claims that are not preempted by federal law, and there remain triable issues of material fact as to whether certain of Honda's advertising claims were false and/or misleading. We therefore reverse the trial court's judgment as to Paduano's state law causes of action for deceptive advertising.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

On June 15, 2004, Paduano purchased a 2004 Honda Civic Hybrid that had a continuously variable transmission.[1] The federally mandated label[2] that was on Paduano's vehicle at the time he purchased it showed that the Civic Hybrid with continuously variable transmission had received an EPA rating of 47 miles per gallon (mpg) for city driving and 48 mpg for highway driving. The label also stated, as required by federal regulations, "ACTUAL MILE-AGE will vary with options, driving conditions, driving habits and vehicle[']s condition."

---

[1] The Civic Hybrid that Paduano purchased came in two versions—one with a manual transmission, and one with a continuously variable transmission. As we discuss below, the EPA mileage estimates for the two versions are different.

[2] Section 32908(b)(1) of title 49 of the United States Code requires automobile manufacturers to attach an information label to every new car.

Paduano stated that he had read and relied on statements Honda made in an advertising brochure describing the attributes of the 2004 Civic Hybrid in deciding to purchase the vehicle. The brochure highlighted an EPA estimate of 51 mpg for the manual transmission version of the Civic Hybrid, but noted that this estimate did not apply to the continuously variable transmission version. The brochure contained other statements about the vehicle, as well.[3]

Paduano drove the vehicle for approximately a year and became increasingly dissatisfied with his vehicle's fuel economy performance. During this time, the vehicle achieved less than half of the EPA estimated fuel economy level. Paduano took the vehicle to several Honda dealerships during the summer and fall of 2004 to attempt to find out "how [he] could get higher mileage out of [his] car." Paduano was told that the Civic Hybrid engine required a "break-in" period before it would achieve improved fuel economy. The break-in period was described variously to Paduano as 3,000 miles, 5,000 to 10,000 miles, and 7,500 miles. However, a Honda representative testified during a deposition in this case that, in actuality, no such break-in period is required in order for a Civic Hybrid to achieve "improved" mileage.

An employee at one of the Honda dealerships that Paduano visited conducted a road test, during which the employee claimed that Paduano's car had achieved 49.1 mpg.[4] That employee informed Paduano that in order to achieve the kind of gas mileage that the EPA had estimated for his vehicle, a driver must drive the vehicle in a specialized manner. The employee told Paduano that "it is very difficult to get MPG on [the] highway and to drive with traffic in a safe manner," and further indicated that the specialized driving that would be required in order to achieve the estimated mileage "would create a driving hazard."

Paduano called Honda's customer service telephone line and was informed that Honda had received " '[a] high number of complaints about customers not receiving the posted and advertised mileage.' " The Honda representative also told Paduano that both Honda and Toyota have " '[a]pproached' " the " 'EPA to change [the] mileage [rating]' " to be more in line with the mileage drivers were achieving in their hybrid vehicles.

In a letter dated May 11, 2005, Paduano requested that Honda repurchase his vehicle, and sent notice as required under the Consumers Legal Remedies

---

[3] The relevant statements in Honda's brochure are described in more detail in part III.C.2.b., *post.*

[4] At his deposition, Paduano appeared to challenge the accuracy of the Honda employee's mileage calculation based on this road test. Paduano was not present in the vehicle during the road test, but said that he had independently reset the vehicle's trip meter prior to the road test. According to Paduano, the display in the vehicle indicated that the vehicle had attained only 37.8 mpg during the road test.

Act (CLRA; Civ. Code, § 1750 et seq.) in May 2005. In his letter, Paduano stated that he had "consistently gotten 23 to 30 miles per gallon" from his vehicle. Honda declined Paduano's repurchase demand in a letter dated May 25, 2005.

## B. *Procedural background*

Paduano filed a complaint on August 15, 2005, in which he alleged two causes of action for violations of the Song-Beverly Consumer Warranty Act (Song-Beverly) (Civ. Code, § 1793.2, subd. (d)), one cause of action for a violation of the federal Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss) (15 U.S.C. § 2301 et seq.); one cause of action for violation of the CLRA (Civ. Code, § 1770, subd. (a)); and one cause of action for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).

On September 22, 2005, Honda filed an answer to Paduano's complaint. Honda did not raise the issue of federal preemption in its answer.

On January 13, 2006, Honda filed a case management statement in which Honda notified the court that it expected to file a motion for summary adjudication, and that plaintiff's deposition and the deposition of Honda's designated representative would be completed by the end of January 2006. Honda said nothing about amending its answer, nor did Honda indicate that it planned to raise a federal preemption defense. The parties attended a case management conference on January 13, 2006, at which Honda again made no mention of the federal preemption defense.

On May 12, 2006, Honda moved for summary judgment, arguing both that federal law preempts all of Paduano's claims, and that Paduano's claims must fail because there had been no breach of warranty or deceptive advertising, as a matter of law.

On June 8, 2006, Honda filed a motion for leave to amend its answer to allege three additional affirmative defenses.[5] The three affirmative defenses related to Honda's assertion that Paduano's causes of action were preempted by federal law. Honda argued that it should be permitted to plead these new affirmative defenses because the defenses clarified Honda's original third affirmative defense in which it asserted that Paduano failed to state a cause of action. On July 14, 2006, the trial court granted Honda's motion for leave to amend its answer. On the same day, Paduano filed his opposition to Honda's motion for summary judgment.

---

[5] Honda did not amend its answer for more than a year after the complaint was filed.

The trial court tentatively ruled in favor of Honda at the July 28, 2006, hearing on Honda's motion for summary judgment. Paduano sought a continuance of the hearing. In early September, Paduano filed a supplemental opposition to Honda's motion for summary judgment. Honda filed a supplemental reply.

On September 15, 2006, the trial court ruled that Honda was entitled to summary judgment. The court concluded that "[a]s to plaintiff's contention that his gas mileage was so bad that there must be a defect in the car, no evidence is presented to show the car had any manufacturing defect." In addition, the trial court determined that "the representations in [Honda's] brochure appear to comply with 16 C.F.R. 259.2." The court also reaffirmed a number of its tentative rulings, including that (1) Paduano's state law warranty claims are preempted by federal law; (2) Honda made no express warranty as to gas mileage; (3) section 32908(d) of 49 United States Code clarifies that Honda's disclosures regarding gas mileage do not constitute a warranty under state or federal law; (4) Paduano's deceptive advertising and misrepresentation claims are preempted by section 32919 of 49 United States Code; and (5) the brochure "does not contain any representation or warranty that plaintiff would be able to obtain a certain fuel efficiency while driving his car in his customary manner."

The trial court granted summary judgment in favor of Honda on October 31, 2006. Entry of judgment was served on November 8, 2006. Paduano filed a timely notice of appeal on January 2, 2007.

## III.

## DISCUSSION

Paduano asserted five causes of action in his complaint, three of which are warranty claims based on state and federal law, and two of which are state law claims under the CLRA and UCL, based on allegations of misrepresentation. On appeal, Paduano contends that the trial court erred in concluding that federal law preempts his claims of misrepresentation and breach of warranty. Honda maintains that federal law "preempts all state and local laws that impose fuel economy disclosure requirements that are not 'identical' to those imposed by federal law." Honda further contends that it "is entitled to summary judgment on [Paduano's] claims because the record demonstrates that Honda's statements about the fuel economy of the Civic Hybrid were accurate and not misleading."

We conclude that the trial court was correct in granting summary adjudication in favor of Honda on Paduano's warranty claims. However, we disagree

with Honda's contention that federal law entirely preempts Paduano's misrepresentation claims and/or that the statements Honda made in its advertising about the Civic Hybrid's fuel economy are, as a matter of law, accurate and not misleading. The federal law that regulates fuel economy estimates and labels does not preempt every lawsuit that challenges any statement an automobile manufacturer makes regarding fuel economy. Because there remain material issues of fact with respect to whether some of Honda's advertising claims concerning its Civic Hybrid are false and/or misleading, the trial court should not have granted summary adjudication of Paduano's causes of action challenging Honda's advertising.

### A.  *Legal standards*

Summary judgment is appropriate when "all the papers submitted show that there is no triable issue as to any material fact . . ." such that a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The burden of persuasion remains with the party moving for summary judgment." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30] (*Kahn*), citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 861 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' [Citation.]" (*Kahn, supra,* 31 Cal.4th at p. 1003.)

On appeal, the reviewing court makes " 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law. [Citations.]' " (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1143 [29 Cal.Rptr.3d 144], quoting *Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222–223 [38 Cal.Rptr.2d 35].) A trial court's ruling granting summary judgment may be affirmed on appeal if it is proper on any theory of law applicable to the case. (*Farron v. City and County of San Francisco* (1989) 216 Cal.App.3d 1071, 1074 [265 Cal.Rptr. 317].)

## B. *The federal framework relating to fuel economy estimates*

Honda contends that federal law preempts all of Paduano's claims, either expressly or by way of conflict preemption principles. According to Honda, certain provisions of the EPCA that regulate disclosure of fuel estimates preclude Paduano's causes of action.

Chapter 329 of title 49 of the United States Code (49 U.S.C. § 32901 et seq.), which was enacted as part of the EPCA, in conjunction with regulations promulgated by the EPA and the Federal Trade Commission (FTC), establishes a federal regulatory scheme for measuring and disclosing automobile fuel economy ratings. One of the purposes of the statutory scheme is to assist consumers in making comparisons of the fuel economy of new vehicles.

Title 49 United States Code section 32901(a) defines " 'average fuel economy' " as "average fuel economy determined under section 32904 [entitled '[c]alculation of average fuel economy'] of this title" (§ 32901(a)(5)) and defines " 'average fuel economy standard' " as "a performance standard specifying a minimum level of average fuel economy applicable to a manufacturer in a model year." (§ 32901(a)(6).) That section also provides that " 'fuel economy' " refers to "the average number of miles traveled by an automobile for each gallon of gasoline (or equivalent amount of other fuel) used, as determined by the Administrator under section 32904(c) of this title [49 U.S.C.]." (*Id.*, § 32901(a)(10).)

Title 49 United States Code section 32904(a) establishes that the "Administrator of the Environmental Protection Agency shall calculate the average fuel economy of a manufacturer . . . ." Section 32904(c) sets forth the "[t]esting and calculation procedures," as follows: "The Administrator shall measure fuel economy for each model and calculate average fuel economy for a manufacturer under testing and calculation procedures prescribed by the Administrator. However, except under section 32908 of this title, the Administrator shall use the same procedures for passenger automobiles the Administrator used for model year 1975 (weighted 55 percent urban cycle and 45 percent highway cycle), or procedures that give comparable results. A measurement of fuel economy or a calculation of average fuel economy (except under section 32908) shall be rounded off to the nearest .1 of a mile a gallon. The Administrator shall decide on the quantity of other fuel that is equivalent to one gallon of gasoline. To the extent practicable, fuel economy tests shall be carried out with emissions tests under section 206 of the Clean Air Act (42 U.S.C. 7525)."

Title 49 United States Code section 32908(b)(1) requires that every automobile manufacturer "attach a label to a prominent place on each automobile manufactured in a model year."[6] That provision provides:

"(1) Under regulations of the Administrator of the Environmental Protection Agency, a manufacturer of automobiles shall attach a label to a prominent place on each automobile manufactured in a model year. The dealer shall maintain the label on the automobile. The label shall contain the following information:

"(A) the fuel economy of the automobile.

"(B) the estimated annual fuel cost of operating the automobile.

"(C) the range of fuel economy of comparable automobiles of all manufacturers.

"(D) a statement that a booklet is available from the dealer to assist in making a comparison of fuel economy of other automobiles manufactured by all manufacturers in that model year.

"(E) the amount of the automobile fuel efficiency tax imposed on the sale of the automobile under section 4064 of the Internal Revenue Code of 1986 (26 U.S.C. 4064).

"(F) other information required or authorized by the Administrator that is related to the information required by clauses (A)–(D) of this paragraph."

In addition, the EPA must "prepare the booklet referred to in subsection (b)(1)(D) of [the same] section," which is to contain, among other things, "information on fuel economy and estimated annual fuel costs of operating automobiles manufactured in each model year . . . ." (49 U.S.C. § 32908(c)(1)(B).)

Title 49 United States Code section 32908(d) provides that "[a] disclosure about fuel economy or estimated annual fuel costs under this section does not establish a warranty under a law of the United States or a State."

---

[6] Another section of the United States Code requires that the label be "affix[ed] to the windshield, or side window" of each new vehicle. (15 U.S.C. § 1232.) That provision also requires disclosure of additional information, including the final assembly point, the suggested retail price, and the suggested retail prices for accessories and optional equipment. (*Ibid.*) This label has been referred to as a "Monroney sticker." (See *Acadia Motors, Inc. v. Ford Motor Co.* (1st Cir. 1995) 44 F.3d 1050, 1054, fn. 6.)

Title 49 United States Code section 32919 sets forth the preemption principles applicable to the chapter. That section provides in relevant part:

"(a) General.—When an average fuel economy standard prescribed under this chapter [(49 U.S.C. § 32901 et seq.)] is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter [(49 U.S.C. § 32901 et seq.)].

"(b) Requirements Must Be Identical.—When a requirement under section 32908 of this title [(49 U.S.C. § 32908)] is in effect, a State or a political subdivision of a State may adopt or enforce a law or regulation on disclosure of fuel economy or fuel operating costs for an automobile covered by [49 United States Code] section 32908 only if the law or regulation is identical to that requirement."

C. *Analysis*

1. *Paduano's warranty claims fail*

In his first and second causes of action, Paduano asserts that his vehicle developed certain defects that caused the vehicle to achieve reduced fuel efficiency, and that Honda failed to service or repair his vehicle in accordance with the warranty Honda provided, in violation of the Song-Beverly Act (Civ. Code, § 1793.2, subd. (d)). In his third cause of action, Paduano repeats the allegation that his vehicle developed these defects, and alleges that Honda failed to repair the defects or malfunctions and failed to give Paduano a refund or to replace his vehicle, in violation of Magnuson-Moss (15 U.S.C. § 2304(a)(4)). The defects Paduano identifies in his complaint are "defects with the engine, defects with the fuel system, defects causing the vehicle to get reduced mileage." Paduano does not clearly identify what mileage he claims Honda warranted he could get from his Civic Hybrid. However, based on his arguments, we deduce that Paduano is claiming that Honda warranted that his vehicle would achieve the EPA estimates or a level close to those estimates.

■ Under Magnuson-Moss, "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time . . ." constitutes a written warranty (15 U.S.C. § 2301(6)(A)). ■ Under Song-Beverly, an express warranty is "[a] written statement

arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance . . . ." (Civ. Code, § 1791.2, subd. (a)(1).) Paduano asserts that Honda's warranty, which provides in relevant part that "every new Honda is covered, except for tires, for 3 years or 36,000 miles," applies to Honda's advertising claims that the Civic Hybrid would achieve a certain fuel economy level. According to Paduano, because the warranty does not expressly exclude "mileage related defects," Honda must have warranted that Paduano's vehicle would achieve the EPA estimated mileage.

The trial court concluded that federal law preempts Paduano's warranty claims, and that in any event, Honda did not provide a warranty as to gas mileage. We agree that Paduano's warranty claims fail.

First, it is clear that the EPA mileage estimate does not constitute a warranty, and Paduano can point to no promise Honda made to the effect that his Civic Hybrid would attain any particular fuel economy level. Pursuant to federal statute, Honda provided the EPA estimates of the fuel economy of its Civic Hybrid and used EPA estimates in its advertising. Title 49 United States Code section 32908(d) clearly provides that "[a] disclosure about fuel economy or estimated annual fuel costs under this section does not establish a warranty under a law of the United States or a State." Thus, to the extent that Honda identified the EPA fuel economy estimates in the Monroney sticker and reiterated those EPA mileage estimates in its own advertising, Honda's provision of those estimates does not constitute an independent warranty that Paduano's vehicle would achieve the EPA fuel economy estimates or a similar level of fuel economy.[7]

To the extent that Paduano contends that any particular mileage is warranted under Honda's general "bumper to bumper" new car warranty because, as he asserts, the warranty does not otherwise *exclude* mileage from its coverage, this contention also fails. Honda warrants that it will "repair or replace any part that is defective in material or workmanship under normal use." Honda established that there is no evidence that Paduano's vehicle suffers from any *defect* related to the mileage it attains, since none of the testing of Paduano's vehicle identified any problem with any parts in

---

[7] Paduano does not identify any other claims made by Honda to the effect that his vehicle would achieve a certain fuel economy. Although Paduano contends that Honda made claims in its advertising that its Civic Hybrid could achieve 51 mpg, as we discuss further in section III.C.2., *post*, Honda's statement is based on EPA fuel economy estimates for a Civic Hybrid with a manual transmission. It is thus a disclosure about fuel economy based on the EPA estimates and, as such, also does not establish a warranty. (49 U.S.C. § 32908(d).)

Paduano's vehicle. Although Paduano asserts that "the mileage on his vehicle is so low that there [must be] something wrong with it," the record offers no evidence of the existence of a defect in his vehicle that is causing it to achieve low mileage.[8] By failing to present any evidence that would suggest that Paduano's relatively low gas mileage is the result of a mechanical defect in his vehicle, Paduano cannot establish that there is a triable issue of material fact with regard to his claims that Honda has not satisfied the provisions of its warranty on the Civic Hybrid with regard to gas mileage.[9] We therefore affirm the trial court's summary adjudication of Paduano's warranty claims in Honda's favor.

2. *There remain triable issues of fact with regard to Paduano's claims under the CLRA and UCL*

a. *The CLRA and UCL legislative schemes*

■ The CLRA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices" in sale or lease transactions. (Civ. Code, § 1770, subd. (a).) The underlying purpose of the CLRA is "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (Civ. Code, § 1760.) Any consumer who suffers any damage as a result of the use or employment by any person of a method, act or practice declared to be unlawful by section 1770 may bring an action against that person for actual damages, injunctive relief, restitution of property, punitive damages, and any other relief the court deems proper. (Civ. Code, § 1780, subd. (a).)

■ The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." (Bus. & Prof. Code, § 17200.) "Section 17200 'is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. [Citation.] Thus, California courts have consistently interpreted the language of section 17200 broadly.' [Citation.] ' "The statute imposes strict liability. It is not necessary to show that the defendant intended to injure anyone." ' [Citation.]" (*South Bay Chevrolet v.*

---

[8] There is evidence that it is not a defect in Paduano's vehicle that is causing it to attain relatively low gas mileage, but rather, that it may be the manner in which Paduano operates his vehicle and/or certain driving conditions that have caused Paduano's vehicle to attain less-than-optimal fuel economy.

[9] Paduano's mention of other Civic Hybrid owners' complaints as to the fuel economy of their vehicles suggests that Paduano's concern, like the concern of other Civic Hybrid owners, is related to the accuracy of the EPA mileage estimates that are on the Monroney sticker and that Honda chooses to advertise, rather than to any possible defect in his particular vehicle. However, as Paduano clearly recognizes, he may not directly challenge the accuracy of the EPA estimates by way of state law causes of action.

*General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 877 [85 Cal.Rptr.2d 301].) "[T]o state a claim under the [UCL] one need not plead and prove the elements of a tort. Instead, one need only show that 'members of the public are likely to be deceived.' [Citations.]" *(Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

A UCL cause of action " 'may be based on representations to the public which are untrue, and " 'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under' " the UCL.' [Citation.]" *(Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134 [61 Cal.Rptr.3d 221].) "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' . . . . [Citations.]" *(Id.* at pp. 134–135.)

> b. *Additional facts concerning statements Honda made regarding fuel economy*

The Monroney sticker on Paduano's vehicle showed a "CITY MPG" of 47 and a "HIGHWAY MPG" of 48. As required by regulations imposed by the FTC in 16 Code of Federal Regulations part 259.2(a) (2009), the label also stated, "ACTUAL MILEAGE will vary with options, driving conditions, driving habits and vehicle[']s condition. Results reported to EPA indicate that the majority of vehicles with these estimates will achieve between [¶] 39 AND 55 mpg in the city and between [¶] 40 AND 56 mpg on the highway."

Paduano identifies as misleading a number of claims Honda made in a sales brochure for its Civic Hybrid. For example, Paduano challenges an image of text reading "51 mpg" that appears in the background, in large yellow font, behind a paragraph of smaller text in the brochure. He asserts that "[t]he 51 mpg representation in oversize type is without qualification." The text that appears over the image of "51 mpg" states, "With impressive fuel economy of up to 51 mpg,[10] you save money, the planet conserves resources and the air is just a little cleaner." On another page, the brochure explains that the 51-mpg rating refers to the manual transmission hybrid model, and identifies an EPA estimate of 48 mpg for the variable transmission model: "The Hybrid is equipped with a standard slick-shifting 5-speed manual transmission that features a low-effort clutch to take some of the

---

[10] There are multiple footnote references in the text of the brochure, but the copy of the brochure in the appellate record does not include the text of the footnotes referenced in the document. One of those footnotes occurs at this point in the text.

work out of shifting for yourself. If you prefer to let the car do your shifting for you, a continuously variable transmission (CVT) is available. With this transmission, the Hybrid achieves an impressive EPA city mileage rating of 48 mpg."

Paduano also complains about Honda's statement, "Just drive the Hybrid like you would a conventional car and save on fuel bills." The paragraph in the brochure in which this statement appears reads: "I NEVER HAVE TO PLUG IT IN, RIGHT? That's correct—never. The charging system is completely self-sufficient so the powertrain automatically recharges the onboard batteries while you're driving. *Just drive the Hybrid like you would a conventional car and save on fuel bills.*" (Italics added.)

Paduano further points out that Honda's brochure tells customers that they do not have to do "anything special" in order to get "terrific gas mileage." The brochure states, "IS THERE ANYTHING SPECIAL I HAVE TO DO? You just have to love saving money and getting terrific gas mileage.[11] And when it's time for maintenance or repairs, simply take your Civic Hybrid to your local Honda dealer—or any Honda dealer—for expert, experienced hybrid-vehicle services."

### c. *Analysis*

#### (i) *Paduano has raised triable issues of fact regarding Honda's advertising claims*

Paduano makes much of the fact that Honda's brochure shows the phrase "51 mpg" in large font, contending that Honda is advertising the 51-mpg fuel economy "without qualification," and that this mileage figure is different from the EPA's 49-mpg estimate on the Monroney label on his vehicle. However, it is clear from the brochure that the "51 mpg" refers to the EPA estimate for the manual transmission vehicle, not to an estimate for Paduano's automatic transmission vehicle. The brochure clarifies that a Civic Hybrid with a continuously variable transmission, like the one Paduano purchased, has an EPA mileage rating of 48 mpg. As a matter of law, there is nothing false or misleading about Honda's advertising with regard to its statements that identify the EPA fuel economy estimates for the two Civic Hybrid models.

A fact finder could determine, however, that other statements Honda made in its brochure constitute misrepresentations or are misleading to the public. For example, Honda's statement that one can "[j]ust drive the Hybrid like

---

[11] Another footnote appears at this point in the brochure, with the footnote text not included in the copy of the exhibit provided in the appellate record.

[one] would a conventional car and save on fuel bills" is questionable, in view of evidence Paduano offered to the effect that in order to achieve superior gas mileage close to that advertised by Honda, one must drive a hybrid vehicle in a manner different from the manner in which one would drive a conventional car. Paduano offered evidence that a Honda representative told him that the "mileage tests used were developed over 30 years ago and do not reflect real driving situations, let alone driving habits of consumers in the modern day." Paduano further attested that a Honda representative later admitted that in order to attain the high fuel efficiency that Honda was advertising in its brochure, one would have to drive the hybrid vehicle in a manner quite different from the manner in which one would drive a conventional vehicle. "[T]he tests do not take Hybrid vehicles into consideration, and Hybrid vehicle estimates are inflated based on the test procedures. Honda told [Paduano that] Hybrid vehicles are more dramatically affected by outside influences such as air conditioning, driving habits, windows up/down, and vehicle load than normal combustion engines. Only after purchase did Honda [tell Paduano that] Hybrids require a particular driving style in order to be fuel efficient, and short trips penalize hybrid efficiency more so than regular cars."

Honda asserts that the statement "Just drive the Hybrid like you would a conventional car and save on fuel bills," when read in the context of it being part of a small "FAQs" (frequently asked questions) section in the brochure, simply refers to the fact that the Hybrid does not have to be plugged in. In support of this assertion, Honda points out that the sentence in question appears within a short paragraph that follows the question, "I NEVER HAVE TO PLUG IT IN, RIGHT?" The statement follows other sentences that relate to not having to plug in the vehicle, which read as follows: "That's correct—never. The charging system is completely self-sufficient so the powertrain automatically recharges the onboard batteries while you're driving."

Although the challenged statement regarding driving a hybrid as one would a conventional car and saving on fuel costs appears at the end of a paragraph that contains these other statements, the statement in question does not seem to refer to the fact that one need not plug in the vehicle when not driving. It is not clear why the issue of plugging in a vehicle would have anything to do with how one drives the vehicle, since plugging in a vehicle in order to provide it power would presumably occur while the car was parked and *not* being driven. It is also unclear how the "save on fuel bills" statement is responsive to, or even related to, the posed question, "I never have to plug it in, right?" Thus, although the statement appears in this particular paragraph, a reasonable person could understand Honda to be making a claim about the benefits of the vehicle beyond the discussion of whether the car must be plugged in. The statement is, at best, ambiguous, and could reasonably be

read as stating that one can receive the fuel economy benefits of a hybrid vehicle while driving the vehicle in the same manner as one would drive a conventional vehicle.

Honda also asserts in the brochure that a customer need not do "anything special" in order to get "terrific gas mileage." Specifically, the brochure states, "IS THERE ANYTHING SPECIAL I HAVE TO DO? You just have to love saving money and getting terrific gas mileage.[12] And when it's time for maintenance or repairs, simply take your Civic Hybrid to your local Honda dealer—or any Honda dealer—for expert, experienced hybrid-vehicle services." This statement implies that a hybrid driver need not do "anything special" or different from what one would do with a conventional vehicle in order to achieve the superior gas mileage that Honda is advertising with regard to its hybrid cars.

On summary judgment, it is Honda's burden to present evidence demonstrating that a reasonable person could not find that it is more likely than not that Honda's statements are false and/or misleading. Honda has not met this burden, since Honda presented no evidence to demonstrate that the claims in its brochure could not mislead a reasonable person, as a matter of law. Further, Paduano has presented evidence demonstrating that there remain triable issues of fact with respect to the veracity of Honda's brochure assertions. Specifically, Paduano presented evidence that directly disputes Honda's claim that a driver need not do anything special in order to achieve gas mileage close to the EPA estimate. A Honda representative told Paduano, "[Y]ou cannot drive in a normal manner in order to get the mileage," and explained that driving in a " 'normal manner' " meant "[a]ccelerating with the flow of traffic, stopping with the flow of traffic, accelerating as by law you're supposed to [do] to get on the highway, being at highway speed at the time that you're entering the first lane." According to Paduano, the Honda employee told him, " 'You can't do any of those [usual] things' " if one wants to " 'obtain better gas mileage.' " This constitutes evidence that one might have to drive the Civic Hybrid in something other than the usual manner of driving a conventional vehicle in order to attain fuel economy close to the EPA estimates, evidence thereby contradicting Honda's statements to the effect that a driver need not do "anything special." There is thus evidence that "getting terrific gas mileage" might not be accomplished as easily as Honda suggests to consumers in its brochure. In addition, Honda admitted that other customers had registered complaints similar to Paduano's about the fuel economy they were achieving with their Civic Hybrid vehicles. This constitutes additional evidence that Honda's advertising claims may be misleading, since a number of other drivers who presumably drove their

[12] Again, the copy of the brochure that is in the appellate record does not include the text of a footnote that appears here in the document.

vehicles as they would conventional vehicles were also apparently unable to achieve mileage close to the EPA estimates, and were frustrated with the mileage they were achieving. Based on this evidence, a reasonable trier of fact could find that some of Honda's advertising statements regarding the Civic Hybrid were false and/or misleading for purposes of Paduano's CLRA and UCL claims.

Paduano also attested that he relied on the representations in the Honda brochure in deciding to buy the Civic Hybrid. He stated, "Honda said in the brochure the car could be driven like a conventional car and be fuel efficient. That is not true." Paduano further stated that if he had known that this statement was not accurate, he would not have purchased the vehicle. If a fact finder were to accept Paduano's testimony in this regard, the testimony would demonstrate that Paduano was personally misled by the challenged statements. The evidence Paduano presented is sufficient to raise triable issues of material fact as to Paduano's UCL and CLRA claims.[13]

### (ii) *Federal law does not preempt Paduano's UCL and CLRA claims*

Honda contends that Paduano's complaint alleges that Honda "violated California's consumer protection statutes by repeating the EPA fuel economy estimates for the 2004 Civic Hybrid in its advertising." After describing Paduano's claims in this manner, Honda goes on to argue that Paduano's claims are preempted by federal law pertaining to the EPA's fuel economy estimates. Despite the manner in which Honda attempts to characterize Paduano's allegations, federal law does not preempt Paduano's UCL and CLRA claims that arise out of statements Honda made in its advertising.

" '[T]he basic rules of preemption are not in dispute: Under the supremacy clause of the United States Constitution (art. VI, cl. 2), Congress has the power to preempt state law concerning matters that lie within the authority of Congress. [Citation.] In determining whether federal law preempts state law, a court's task is to discern congressional intent. [Citation.] Congress's express intent in this regard will be found when Congress explicitly states that it is preempting state authority. [Citation.] Congress's implied intent to preempt is found (i) when it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the states to supplement federal law [citation]; (ii) when compliance with both federal and state regulations is an impossibility [citation]; or (iii) when state law "stands as an obstacle to the accomplishment

---

[13] We do not intend to imply that Paduano will be meritorious in this action. Rather, the state of the evidence demonstrates that a fact finder could reasonably conclude that Honda's brochure statements are false and/or misleading. In such a situation, summary judgment is not appropriate.

and execution of the full purposes and objectives of Congress." [Citations.]' [Citations.]" (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1087–1088 [72 Cal.Rptr.3d 112, 175 P.3d 1170].) "It is well established that the party who asserts that a state law is preempted bears the burden of so demonstrating. [Citations.]" (*Id.* at p. 1088.)

In interpreting the federal law at issue here, we are informed "by a strong presumption against preemption." (*Farm Raised Salmon Cases, supra,* 42 Cal.4th at p. 1088.) " '[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has "legislated . . . in a field which the States have traditionally occupied" [citation], we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." [Citations.]' [Citations.]" (*Ibid.*) "We apply this presumption to the *existence* as well as the *scope* of preemption. [Citation.]" (*Ibid.*)

The presumption against preemption "applies with particular force" in a case such as this one that involves consumer protection laws. (*Farm Raised Salmon Cases, supra,* 42 Cal.4th at p. 1088.) " '[C]onsumer protection laws such as the [UCL], false advertising law, and CLRA, are within the states' historic police powers and therefore are subject to the presumption against preemption.' " (*Ibid.*) "It is with these principles in mind that we consider whether it is the ' "clear and manifest purpose" ' of Congress [citation] to preclude states from providing private remedies for the violations of the state statutes at issue here." (*Ibid.*)

### (a)  *Federal law does not expressly preempt Paduano's claims*

Honda first contends that the provisions of title 49 United States Code section 32919 expressly preempt Paduano's UCL and CLRA claims. Title 49 United States Code section 32919(a) provides in relevant part that "[w]hen an average fuel economy standard prescribed under this chapter is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter." Honda contends that through his claims, Paduano is seeking to "enforce a law or regulation related to fuel economy standards," and that his claims are therefore prohibited under title 49 United States Code section 32919(a). We disagree.

Title 49 United States Code section 32919(a) preempts state laws "related to fuel economy *standards* or average fuel economy *standards*"

(italics added), and pertains to what are often referred to as Corporate Average Fuel Economy (CAFE) standards (see *Center for Biological Diversity v. NHTSA* (2008) 538 F.3d 1172, 1182). The subsection (49 U.S.C. § 32919(a)) does not refer to the specific mileage *estimates* for a particular vehicle, like the Civic Hybrid, that the parties are discussing in this case. As we stated earlier, the "average fuel economy standard" is defined as "a performance standard [prescribed by the Secretary of Transportation] specifying a minimum level of average fuel economy applicable to a manufacturer in a model year." (49 U.S.C. § 32901(6).) Title 49 United States Code section 32902(a), which discusses the setting of economy standards, provides, "At least 18 months before the beginning of each model year, the Secretary of Transportation shall prescribe by regulation average fuel economy standards for automobiles . . . manufactured by a manufacturer in that model year. Each standard shall be the maximum feasible average fuel economy level that the Secretary decides the manufacturers can achieve in that model year."

In addition to meeting any other fuel economy standards prescribed by the Secretary of Transportation, passenger automobiles must meet the minimum standard for domestically manufactured passenger vehicles set by Congress, which, pursuant to statute, is the greater of 27.5 mpg, or 92 percent of the average fuel economy projected for the combined domestic and nondomestic passenger fleets manufactured by all manufacturers in a model year (49 U.S.C. § 32902(b)). Nonpassenger automobiles must meet the standards set by the Secretary of Transportation (*id.*, § 32902(a)). Congress directs the Secretary to set fuel economy standards at "the maximum feasible average fuel economy level that the Secretary decides the manufacturers can achieve in that model year." (*Id.*, § 32902(a).)

Thus, the "fuel economy standards" prescribed by the Secretary of Transportation set the minimum fuel efficiencies for a manufacturer's entire fleets and/or fleets of subclasses of vehicles. These "standards" are not the same as the fuel economy estimates for each model of vehicle that are required to be posted on the Monroney label, pursuant to 49 United States Code section 32908. Rather, the "standards" are exactly what the name suggests: the minimum efficiency benchmarks that automobile manufacturers must meet. In contrast, the EPA mileage estimates that are at issue in this case refer to the actual measurement of the fuel efficiency of a particular model of car—calculations that are used, among other purposes, to determine whether a manufacturer has met the applicable fuel economy standards for a particular year.[14] Consequently, one cannot read Paduano's claims as seeking to impose

---

[14] The dissent is under the misimpression that the phrase "fuel economy standards" as used in title 49 United States Code section 32919(a) means the same thing as the "fuel economy" of a model of vehicle. By suggesting that Congress was referring to the fuel economy estimate required on a Monroney sticker when it used the phrase "fuel economy standards" as one of

or enforce a law "related to fuel economy standards or average fuel economy standards." (49 U.S.C. § 32919(a).) Enforcement of the UCL and/or CLRA in this case would not in any way "relate to" the imposition of minimum fuel efficiency performance standards on Honda or other vehicle manufacturers for a class, subclass, or fleet of vehicles. Thus, section 32919(a) of title 49 of the United States Code simply has no application in this case.

Honda similarly argues that title 49 United States Code section 32919(b) prevents Paduano from pursuing his UCL and CLRA claims. That provision states in pertinent part, "When a requirement under section 32908 of this title [(49 U.S.C. § 32908)] is in effect, a State or a political subdivision of a State may adopt or enforce a law or regulation on disclosure of fuel economy or fuel operating costs for an automobile covered by [49 United States Code] section 32908 only if the law or regulation is identical to that requirement." (49 U.S.C. § 32919(b).) According to Honda, California may not obligate an automobile manufacturer "to comply with any requirement pertaining to the disclosure of a vehicle's fuel economy unless an identical requirement is already imposed by Section 32908." Honda goes on to assert that "Paduano's deceptive advertising and misrepresentation claims would impose *nonidentical* disclosure requirements that are directly prohibited by statute," because, Honda contends, "[t]he core of his claims is that disclosing the EPA mileage estimate by itself is deceptive *per se* unless accompanied by additional alleged facts concerning the Civic Hybrid's fuel economy."

---

two disjunctive prepositional objects in section 32919(a) of title 49 of the United States Code, the dissent renders meaningless the word "standards" in this phrase. Common sense dictates that a "standard" is a benchmark set by the governmental entity under whose aegis the subject matter falls. Although Congress did not specifically define the phrase "fuel economy standard," Congress did define the phrase "fuel economy" to refer to the fuel economy estimate that is at issue in this case: "the average number of miles traveled by an automobile for each gallon of gasoline (or equivalent amount of other fuel) used, as determined by the Administrator under section 32904(c) of this title [(49 U.S.C. § 32904(c))]." (49 U.S.C. § 32901(a)(11).) The dissent's reading is therefore unreasonable, given that Congress could have used the term "fuel economy," rather than "fuel economy standards," if that was its intention.

The fact that the phrases "average fuel economy" and "average fuel economy standard" are defined to mean different things in the statute (see 49 U.S.C. § 32901(a)(5), (6)), lends further support to our conclusion that the phrases "fuel economy" and "fuel economy standards" do not refer to the same thing. The most reasonable interpretation of title 49 United State Code section 32919(a) is that Congress included the phrase "fuel economy standards," in conjunction with the phrase "average fuel economy standards," to preempt state efforts to impose *any* type of fuel efficiency performance standard on any class, subclass, or group of vehicles such as, for example, all hybrid vehicles. In other words, the inclusion of the phrase "fuel economy standards" serves to broaden the scope of the preemption provision to cover more than state laws that relate to a single "performance standard specifying a minimum level of average fuel economy applicable to a manufacturer in a model year," which is the narrow definition of an "average fuel economy standard" under title 49 United States Code section 32901(a)(6).

Contrary to Honda's characterization of Paduano's UCL and CLRA claims, Paduano is not claiming that disclosing the EPA mileage estimates is, by itself, deceptive. Rather, Paduano maintains that Honda has voluntarily made additional assertions, *beyond* the disclosure of the mileage estimates, that are untrue or misleading, and that federal law does not require, or even address, these additional assertions. Paduano's claims are based on statements Honda made in its advertising brochure to the effect that one may drive a Civic Hybrid in the same manner as one would a conventional car, and need not do anything "special," in order to achieve the beneficial fuel economy of the EPA estimates. It is not, as Honda maintains, the disclosure of the EPA estimates that Paduano claims is deceptive per se. What Paduano is challenging is Honda's added commentary in which it alludes to those estimates in a manner that may give consumers the misimpression that they will be able to achieve mileage close to the EPA estimates while driving a Honda hybrid in the same manner as they would a conventional vehicle. Paduano does not seek to require Honda to provide "additional alleged facts" regarding the Civic Hybrid's fuel economy, as Honda suggests, but rather, seeks to prevent Honda from making misleading claims about how easy it is to achieve better fuel economy. Contrary to Honda's assertions, if Paduano were to prevail on his claims, Honda would not have to do anything differently with regard to its disclosure of the EPA mileage estimates.

Recent United States Supreme Court precedent clarifies why 49 United States Code section 32919(b) does not preempt Paduano's claims. In *Altria Group, Inc. v. Good* (2008) 555 U.S. ___ [172 L.Ed.2d 398, 129 S.Ct. 538] (*Altria Group*), the Supreme Court concluded that another federal statute, the Federal Cigarette Labeling and Advertising Act (Labeling Act; 15 U.S.C. § 1331 et seq.), does not preempt claims by the plaintiffs that Altria's advertising of certain cigarettes as "light" and as providing "lowered tar and nicotine" constituted fraudulent advertising under the Maine Unfair Trade Practices Act (MUTPA). The express preemption provision at issue in the case, 15 United States Code section 1334(b), provides that " '[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.' [Citation.]" (*Altria Group, supra*, at p. ___ [172 L.Ed.2d at p. 407].)

In interpreting this preemption provision, the Supreme Court noted that "the text of § 1334(b) does not refer to *harms* related to smoking and health," but, rather, "it pre-empts only *requirements and prohibitions—i.e.*, rules—that are based on smoking and health." (*Altria Group, supra*, 555 U.S. at p. ___ [172 L.Ed.2d at p. 410].) The court observed that because the MUTPA "says nothing about either 'smoking' or 'health,' " it "is a general rule that creates a duty not to deceive." (*Ibid.*) Claims for fraudulent advertising brought under the MUTPA are not preempted under the Labeling Act because the MUTPA is

not a law or regulation "based on" smoking or health: " '[T]he phrase "based on smoking and health" fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements.' [Citation.]" (*Altria Group, supra,* at p. ___ [172 L.Ed.2d at p. 412].)

█ The text of title 49 United States Code section 32919(b) at issue in the present case involves language similar to the preemption language analyzed in *Altria Group.* The provision at issue in this case provides that a state "may adopt or enforce a law or regulation *on* disclosure of fuel economy or fuel operating costs . . . only if the law or regulation is identical to [the federal requirement under 49 United States Code section 32908]." (49 U.S.C. § 32919(b), italics added.) The word "on" in 49 United States Code section 32919(b) is the functional equivalent of the words "based on" in the provision of the Labeling Act at issue in *Altria Group.* Here, neither the UCL nor the CLRA is a law that is based "on" disclosure of fuel economy or fuel operating costs; rather, the UCL and CLRA are both laws of general application that create a duty not to deceive, just like the MUTPA. Thus, the phrase "on disclosure of fuel economy or fuel operating costs," like the language in the Labeling Act addressed in *Altria Group,* cannot be construed to encompass the general duty not to make fraudulent or misleading statements.

> (b) *Implied preemption principles do not require that Paduano's deceptive advertising claims be dismissed*

Honda also argues that implied preemption principles apply to bar Paduano's claims.[15] According to Honda, Paduano's "advertising claims are preempted for the additional reason that they would stand as an obstacle to the accomplishment of the purpose underlying [the] federal fuel economy disclosure regime." We disagree.

█ The fact that the EPCA contains an express preemption clause is useful for purposes of determining the existence and scope of any implied preemption. (See *Farm Raised Salmon Cases, supra,* 42 Cal.4th at p. 1092 ["the provision's [express preemption] language is significant because it informs our analysis of the existence of any implied preemption"].) " '[A]n

---

[15] Even where Congress may not have explicitly stated an intent to preempt state authority, an implied intent can be found " '(i) when it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the states to supplement federal law [citation]; (ii) when compliance with both federal and state regulations is an impossibility [citation]; or (iii) when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." [Citations.]' [Citations.]" (*Farm Raised Salmon Cases, supra,* 42 Cal.4th at pp. 1087–1088.)

express definition of the pre-emptive reach of a statute "implies"—i. e., supports a reasonable inference—that Congress did not intend to pre-empt other matters . . . .' [Citation.]" (*Ibid.*, italics omitted.) "While an express clause does not foreclose an inquiry into implied conflict preemption in all cases [citation], deference should be paid to Congress's detailed attempt to clearly define the scope of preemption under the [relevant statutory scheme]. [Citation.]" (*Ibid.*)

Honda asserts that if Paduano were to prevail on his claims, "California law would require car manufacturers to provide additional—and even contradictory—fuel economy information to protect themselves from liability whenever they publish the fuel economy estimates that the EPA has created . . . ." This assertion is not accurate. In the brochure at issue, Honda makes claims about the fuel economy of its Civic Hybrid that extend beyond the fuel economy disclosures that federal law requires. Specifically, Honda suggests that one may drive its hybrid vehicle as one would drive a conventional vehicle, and attain fuel economy similar to the EPA estimates. However, Paduano presented evidence to the contrary. As discussed in part III.C.2.c(ii)(a), *ante*, if Paduano were to prevail, Honda would be precluded from making statements in its advertising that suggest that its hybrid vehicles can attain the high fuel economy represented in the EPA estimates while being driven in the same manner as one would drive a conventional car. Thus, Honda would not be required to make additional statements about the EPA estimates, but, rather, would merely be required to stop making false or misleading claims about how one can attain fuel economy similar to the EPA estimates.

In fact, one could conclude that the statements in Honda's advertising brochure contradict the fuel economy information that the Monroney sticker is intended to supply to consumers. Pursuant to federal regulation, the Monroney sticker is to include the statement, " 'Your actual mileage will vary depending on how you drive and maintain your vehicle.' " (40 C.F.R. § 600.307-08(b)(4) (2008).) Honda's advertising suggests that one can attain the EPA estimated gas mileage regardless of one's driving habits.

In addition, if, as Honda asserts, the EPA fuel economy estimates provide consumers with the means to "make an apples-to-apples comparison of fuel efficiency across vehicle makes, models and classes," then misleading claims about how a driver can attain such fuel efficiency would serve as obstacles to accomplishing the purposes of the federal law. On the other hand, California's laws that prohibit such misleading claims in advertising further the purposes of the federal law by preventing manufacturers from making deceptive statements that would make it difficult for consumers to make fair comparisons of the various options available to them.

In its claim of implied preemption, Honda maintains, as it does with regard to its claim of express preemption, that Paduano's CLRA and UCL claims "rest[] on the impermissible premise that the EPA fuel economy estimates based on the EPA testing method are inherently deceptive." Honda's framing of the issue again misses the point. Paduano's claims may be understood as arising from statements Honda made in its advertising—statements that go beyond simply providing the EPA fuel economy estimates for its vehicles. It is the combination of the EPA fuel estimates with Honda's additional assertions in its advertising materials that creates the problem of which Paduano complains. Paduano does not maintain that the EPA fuel economy estimates, by themselves, are inherently deceptive. Rather, it is the use of the EPA fuel economy estimates in advertising in which additional claims are made as to *how one can achieve* such economy, that Paduano challenges as deceptive.

In *True v. American Honda Motor Co.* (2007) 520 F.Supp.2d 1175 (*True*), a federal district court considered a preemption argument similar to the one Honda makes here. The plaintiff in *True* brought claims under the UCL and the CLRA based on allegedly false and deceptive advertisements by Honda "regarding the fuel efficiency and cost savings of its Honda Civic Hybrid automobile." (*True, supra,* 520 F.Supp.2d at p. 1178.) Although the court was assessing Honda's assertion of preemption on a motion to dismiss rather than at the summary judgment stage, the *True* court's comments concerning preemption are useful here.

The plaintiff in *True* challenged certain of Honda's advertisements concerning its Civic Hybrid vehicle. The *True* court explained the allegations as follows: "During the Class Period, Defendant advertised the HCH with allegedly false statements of its fuel efficiency and the prospective cost savings to the consumer. [Citation.] The actual fuel efficiency of the HCH is and was up to 53 percent below the mileage per gallon ('MPG') and costs savings that Defendant advertised. . . . [¶] . . . Federal law requires that each new HCH display a so-called 'Monroney Sticker' at its point-of-sale, reciting fuel estimates based on methods mandated by the Environmental Protection Agency ('EPA'). . . . While federal law requires that the Monroney Stickers disclaim these estimates with the words, '[a]ctual mileage *will vary*,' Defendant's print and Internet advertising materials either (1) weakened the disclaimer to read, '[a]ctual mileage *may vary*,' or (2) omitted the disclaimer entirely." (*True, supra,* 520 F.Supp.2d at p. 1178, citation omitted.)

Honda argued that the EPCA preempted the plaintiff's claims. The *True* court described the requirements of the relevant federal law as follows: "Section 32908(b) of Title 49, U.S.C., requires automobile manufacturers to display Monroney Stickers, containing certain information, on each vehicle.

Further, dealers are required to make available for prospective buyers a booklet containing information on a vehicle's fuel economy. 49 U.S.C. § 32908(c). EPA regulations require that the Monroney Stickers contain the phrase 'your actual mileage will vary depending on how you drive and maintain your vehicle.' 40 C.F.R. § 600.307-08(b)(4)." (*True, supra,* 520 F.Supp.2d at p. 1181.)

The *True* court continued, "Nothing in the EPCA or its accompanying regulations purports to regulate advertising of fuel economy beyond the requirements regarding these stickers and booklets." (*True, supra,* 520 F.Supp.2d at p. 1181.) The court went on to explain, "[A] reasonable inference exists that Congress intended to preempt State regulation in these two areas, i.e., the labeling of vehicles and the mandated provision of an information booklet. It would be an unreasonable assumption, however, that Congress intended to preempt states from regulating false or misleading advertising of a vehicle's fuel efficiency and cost savings." (*Ibid.*)

In rejecting Honda's preemption argument, the *True* court noted Honda's attempt to misstate the plaintiff's claims by "characteriz[ing] Plaintiff's complaint as a challenge to EPA testing guidelines . . . ." (*True, supra,* 520 F.Supp.2d at p. 1181.) The court commented that, if properly described, the plaintiff's complaint "challenge[d] the manner in which Defendant advertised the Honda Civic Hybrid in mediums other than the Monroney Sticker and information booklet." (*Ibid.*) The *True* court explained: "As no clear and manifest Congressional intent to regulate advertising exists, the Court must adhere to the presumption that Congress intended to leave the regulation of false advertising, and unfair business practices of auto manufacturers, to the state. In fact, allowing the States to regulate false advertising and unfair business practices perhaps may further the goals of the EPCA. [¶] Accordingly, California's regulation of false advertising does not stand as an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citation.]" (*True, supra,* 520 F.Supp.2d at p. 1181.)

Honda attempts to distinguish *True* by noting that the *True* court was considering the preemption argument at the initial pleading stage, not at summary judgment, and that the court "did not consider express preemption at all, or even cite [title 49 United States Code section] 32919, much less the express limitation of state regulation of fuel economy disclosure to requirements that are identical with the federal ones." Honda asserts that the *True* court's interpretation of the scope of federal preemption as being limited to labels and the information booklet only, is "a view that is far narrower than even the scope of the *express* preemption provisions in 49 [United States Code section] 32919 . . . ."

■ Honda's assertion that the *True* court did not consider the express preemption provisions of the EPCA is inaccurate. Although the *True* court did not cite section 32919 of title 49 of the United States Code, the court stated, "Nothing in the EPCA or its accompanying regulations purports to regulate advertising of fuel economy beyond the requirements regarding these stickers and booklets." (*True, supra,* 520 F.Supp.2d at p. 1181.) This statement necessarily encompasses the express provisions of 49 United States Code section 32919.

Our reading of title 49 United States Code section 32919 leads us to a conclusion similar to the one the *True* court reached—i.e., that the express preemption provisions do not purport to take away states' power to regulate the advertising of new vehicles, even when that advertising includes the EPA mileage estimates. As long as a state's regulation does not require a manufacturer to provide a fuel estimate different from the EPA fuel economy estimate, or to make claims that go beyond, or are contrary to, what the federal scheme requires, the EPCA does not preempt such regulation. We agree with the *True* court that allowing states to regulate false advertising and unfair business practices may further the goals of the EPCA, and we reject Honda's claim that California's regulation of deceptive advertising somehow acts as an " 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citation.]" (*True, supra,* 520 F.Supp.2d at p. 1181.)

In a supplemental brief filed after Paduano filed his reply, Honda brought to this court's attention two recent United States Supreme Court cases that Honda believes support its position on the preemption issues: *Riegel v. Medtronic, Inc.* (2008) 552 U.S. ___ [169 L.Ed.2d 892, 128 S.Ct. 999] (*Riegel*) and *Rowe v. New Hampshire Motor Transp. Assn.* (2008) 552 U.S. ___ [169 L.Ed.2d 933, 128 S.Ct. 989] (*Rowe*).[16] These decisions do not alter our analysis in this case.

In *Riegel,* the United States Supreme Court considered "whether the pre-emption clause enacted in the Medical Device Amendments of 1976, 21 [United States Code section] 360k, bars common-law claims challenging the safety and effectiveness of a medical device given premarket approval by the Food and Drug Administration (FDA)." (*Riegel, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1002].) Riegel, the plaintiff, sued Medtronic, Inc., after Medtronic's catheter device ruptured during Riegel's coronary angioplasty procedure. (*Id.* at p. ___ [128 S.Ct. at p. 1005].) Riegel alleged that the catheter was "designed, labeled, and manufactured in a manner that violated New York common law . . . ." (*Ibid.*)

---

[16] On April 22, 2008, Honda moved to be permitted to file the supplemental brief, and Paduano objected. On May 22, this court ordered that Honda's motion would be considered with Paduano's appeal. We grant Honda's motion and address the merits of its arguments.

The MDA (Medical Device Amendments of 1976) includes an express preemption provision that provides: " ' "Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—[¶] (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and [¶] (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." ' [Citation.]" (*Riegel, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 1003].)

The *Riegel* court determined that the preemptive effect of the MDA applies to *any* state requirement of general applicability that relates to the "safety or effectiveness" of medical devices "that is different from, or in addition to, federal requirements," and not only to state requirements that pertain only to medical devices. (*Riegel, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 1010].) Honda contends that *Riegel* "confirms that Section 32919(b) preempts Paduano's efforts to base a state-law tort claim on the disclosure of EPA fuel economy figure in advertising." According to Honda, *Riegel* demonstrates that the preemptive effect of title 49 United States Code section 32919(b) applies to state regulation of manufacturers' advertising, and not only to attempted regulation of the Monroney sticker.

The federal statute at issue in *Riegel* differs from 49 United States Code section 32919(b), the preemption provision at issue here. (See *Altria Group, supra*, 555 U.S. at p. ___ [172 L.Ed.2d at p. 412] [" 'relating to' language of the MDA's pre-emption provision is, like the ADA's, much broader than the operative [('based on')] language of the Labeling Act . . ."].) Further, the claims at issue in *Riegel* would have imposed additional requirements directly related to the safety and effectiveness of a device—an area that the MDA clearly covers. (See *Altria Group, supra*, 555 U.S. at p. ___ [172 L.Ed.2d at p. 412] ["plaintiff's common-law products liability claims unquestionably sought to enforce 'requirement[s] relating to safety or effectiveness' under the MDA"].) That is not the case here. As noted above, Paduano's deceptive advertising claims, if successful, would not require Honda to alter its advertising with regard to the EPA estimates themselves.

With respect to *Rowe*, Honda contends that *Rowe, supra*, 552 U.S. ___ [128 S.Ct. 989], speaks to the "preemptive breadth of the phrase 'related to' " as found in title 49 United States Code section 32919(a). However, 49 United States Code section 32919(a) does not apply to Paduano's claims, since, as discussed above, his claims have nothing to do with fuel economy *standards*. And, as we shall further explain, *Rowe* does not provide any additional help in the preemption analysis here. The express preemption provision at issue in *Rowe* provides: " '[A] State . . . may not enact or enforce a law . . . related to

a price, route, or service of any motor carrier . . . with respect to the transportation of property.' 49 U.S.C. § 14501(c)(1); see also [49 U.S.C.] § 41713(b)(4)(A)] (similar provision for combined motor-air carriers)." (*Rowe, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 993].) The question facing the *Rowe* court was whether this federal provision "pre-empts two provisions of a Maine tobacco law, which regulate the delivery of tobacco to customers within the State." (*Ibid.*)

The first challenged provision of the Maine law prohibited "anyone other than a Maine-licensed tobacco retailer to accept an order for delivery of tobacco," and also required licensed retailers to " 'utilize a delivery service' that provides a special kind of recipient-verification service. [Citation.]" (*Rowe, supra*, 552 U.S. at pp. ___–___ [128 S.Ct. at pp. 993–994], italics omitted.) The second provision "forb[ade] any person 'knowingly' to 'transport' a 'tobacco product' to 'a person' in Maine unless either the sender or the receiver ha[d] a Maine license. [Citation.]" (*Id.* at p. ___ [128 S.Ct. at p. 994].) A " 'person [was] deemed to know that a package contains a tobacco product' (1) if the package [was] marked as containing tobacco and display[ed] the name and license number of a Maine-licensed tobacco retailer; or (2) if the person receive[d] the package from someone whose name appears on a list of un-licensed tobacco retailers that Maine's Attorney General distributes to various package-delivery companies. [Citations.]" (*Ibid.*, italics omitted.)

In reaching the conclusion that federal law preempts the Maine laws, the Supreme Court relied on its previous decision in *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 378 [119 L.Ed.2d 157, 112 S.Ct. 2031], in which the court interpreted a virtually identical preemption provision in the Airline Deregulation Act of 1978. (*Rowe, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 994].) Honda focuses on a concept discussed in *Morales*, and explained by the *Rowe* court: "[I]n respect to pre-emption, it makes no difference whether a state law is 'consistent' or 'inconsistent' with federal regulation [citation] . . . ." (*Rowe, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 995].) Honda claims that this language from *Rowe* establishes that for purposes of determining whether a federal law preempts a state law, it does not matter whether the state law is compatible with the federal regulatory regime.[17]

The issue of "consistency" arose in *Morales* in the context of interpreting the "relating to" language in the Airline Deregulation Act's express preemption provision. In this case, however, our concern with regard to the consistency of the federal law and the enforcement of Paduano's deceptive

---

[17] The *True* court found the fact that the state law was compatible with the federal law persuasive in rejecting Honda's assertions of preemption. (*True, supra*, 520 F.Supp.2d at p. 1181.)

advertising claims arises in the context of Honda's own implied preemption argument, i.e., that Paduano's claims are preempted because "they would stand as an obstacle to the accomplishment of the purpose underlying [the] federal fuel economy disclosure regime," not in the context of interpreting the express preemption provisions at issue in this case. The consistency of the regulatory schemes at issue is relevant to the question whether the enforcement of California law in this instance would be an obstacle to the accomplishment of the purposes of the federal law. Here, the schemes are consistent.

If Paduano were to prevail on his CLRA and UCL claims, this would not produce an effect that the federal law seeks to avoid with respect to regulating and posting fuel economy estimates. Through his claims challenging Honda's advertising, Paduano seeks to regulate statements Honda has made outside of the scope of the Monroney label, beyond its mere reiteration of the EPA's estimated fuel economy in its advertising.

### (iii)  *The sufficiency of Paduano's pleadings is not at issue*

The dissent suggests that it would be appropriate to affirm the trial court's grant of summary judgment in favor of Honda based on the inadequacy of Paduano's pleadings with respect to his argument that portions of Honda's brochure violate the UCL and CLRA. Honda has not raised this argument on appeal. On the contrary, in its briefing on appeal, Honda directly addresses the substance of Paduano's claim that the brochure contains deceptive statements, including statements related to "driving style," and asserts that none of the statements in its brochure are in fact false or misleading. This court would be going beyond the issues that the parties have raised on appeal if we were to decide, as the dissent apparently would, that the trial court should not have ruled on Paduano's false advertising claims concerning the brochure, and/or that summary judgment was appropriate because the pleadings were insufficient in scope to include a challenge to statements Honda made in its brochure.[18]

Despite the dissent's assertion that Paduano failed to raise claims related to Honda's "driving style" statements in his opposition to the motion for summary judgment, it is clear that he in fact did so, and that his argument related to both the CLRA and UCL in that it raised the specter of false

---

[18] Generally courts will consider only issues properly raised by the parties on appeal. (*E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 510–511 [146 Cal.Rptr. 614, 579 P.2d 505]; *California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1274–1275 [36 Cal.Rptr.2d 404]; *Bruno v. Superior Court* (1990) 219 Cal.App.3d 1359, 1365 [269 Cal.Rptr. 142].)

advertising. Specifically, in the introduction section of Paduano's supplemental opposition to the summary judgment motion, he stated, "Honda represented that the subject vehicle could be driven like a conventional car and be fuel efficient before purchase. [Citation.] After purchase, Honda told plaintiff that these vehicles require a 'particular driving style' to be fuel efficient. [Citation.]" Clearly Honda cannot claim surprise (and, indeed, has not claimed any surprise) with regard to Paduano's contention that Honda made false and/or misleading statements in its brochure regarding *how* its Civic Hybrid could achieve superior fuel efficiency. If Honda had raised this issue in the trial court, Paduano could have sought leave to amend. However, Honda did not do so.[19] Defendants who "d[o] not take issue with the pleading of a new cause of action, but in their reply papers instead address[] the issue squarely," forfeit their challenge to the pleadings. (*Stalnaker v. Boeing Co.* (1986) 186 Cal.App.3d 1291, 1302 [231 Cal.Rptr. 323] [if defendants had challenged the insufficiency of the pleadings, plaintiffs could have sought leave to amend their complaint and to defer ruling on the summary judgment motion].)

Further, the trial court ruled on the substance of this issue, stating, "To the extent plaintiff relies on a brochure he obtained at the dealer [citation], it does not support an advertising claim for several reasons." Among the reasons the court gave for its conclusion was that "even if plaintiff read the brochure prior to purchase, it does not contain any representation or warranty that plaintiff would be able to obtain a certain fuel efficiency *while driving his car in his customary manner.*" (Italics added.) Honda does not suggest on appeal that the trial court should not have addressed Paduano's arguments about the brochure when it ruled on his brochure-based claims. Instead, Honda notes, "The brochure excerpts that Paduano claims were ignored were lodged as an exhibit to this supplemental opposition [citation] and *are expressly referenced in the trial court's final opinion.*" (Italics added.)

The proceedings in the trial court thus do not support the dissent's suggestion that Paduano has not fairly raised the "driving style" claim.[20]

---

[19] It is ironic that the dissent claims that the majority has "warmly embraced" Paduano's "new" theories of liability presented on appeal, when the dissent embraces an argument that Honda never raised, either in the trial court or in this court.

[20] While the dissent would protect Honda from the "surprise" supposedly occasioned by Paduano's claims that Honda made misrepresentations in its brochure as to how one could achieve the superior mileage touted by Honda, the dissent ignores the fact that Honda never mentioned that it intended to raise a defense of federal preemption until it filed its motion for summary judgment. Honda did not seek to amend its answer to the complaint to assert three additional defenses based on federal preemption until after Honda had filed its motion for summary judgment. Thus, as Paduano prosecuted his case and engaged in discovery, he was not aware that Honda would take the position that his claims might not be actionable because they were preempted by federal law. If Paduano had known that Honda planned to defend on

### (iv) *Conclusion*

Taking into account all of the evidence submitted in support of, and in opposition to, the summary judgment motion, we conclude that there exists a genuine issue of material fact as to whether Honda's advertising statements that suggest that a consumer can drive a Civic Hybrid in the same manner as a conventional vehicle and achieve the superior fuel economy in the EPA estimates, are deceptive and/or misleading. We further conclude that federal law does not preempt Paduano's claims concerning Honda's advertising. Accordingly, the trial court erred in granting judgment as a matter of law in favor of Honda on Paduano's fourth and fifth causes of action.

## IV.

## DISPOSITION

The summary judgment is reversed. We affirm summary adjudication in favor of Honda as to the first, second, and third causes of action, and reverse the trial court's grant of summary adjudication as to the fourth and fifth causes of action. The matter is remanded to the trial court for further proceedings. The parties are to bear their own costs on appeal.

Haller, Acting P. J., concurred.

**O'ROURKE, J.,** Concurring and Dissenting.—I agree with my colleagues' conclusions that Paduano's causes of action for breach of warranty under state and federal law are preempted by federal law. However, for the reasons set forth below I would affirm the order granting summary judgment. In my view, Paduano's false advertising claims under the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.) and unfair competition law (UCL; Bus. & Prof. Code, § 17200) are also preempted by the Energy Policy and Conservation Act of 1975 (EPCA), title 49 United States Code sections 32901 et seq. because those claims are necessarily predicated on Honda's representations about fuel economy and the Honda Civic Hybrid's asserted failure to meet the federal Environmental Protection Agency's (EPA) estimates as to fuel economy. As I understand the claims suggested in the opposing summary judgment papers and on appeal, Paduano seeks to impose a legal duty on Honda to change its disclosures concerning fuel economy to something different from the EPA estimate. In such a case, 49 United States Code section 32919(a) and (b) of the EPCA expressly preempt enforcement of his UCL and CLRA causes of action. But I need not reach the question of federal preemption

---

federal preemption grounds, Paduano might have amended his pleadings to more clearly articulate the grounds for his false advertising claims.

because I would alternatively affirm summary judgment on grounds the so-called advertising statements relied upon by the majority were not alleged in Paduano's complaint, and as a matter of law are not false or misleading, being—at best—nothing more than nonactionable puffery. Accordingly, I respectfully dissent from part III.C.2. of the majority opinion.

The advertising statements referenced by Paduano on appeal (and relied upon by the majority) are contained in a Honda Civic Hybrid brochure and read as follows:

"Just drive the Hybrid like you would a conventional car and save on fuel bills."[1]

"IS THERE ANYTHING SPECIAL I HAVE TO DO? You just have to love saving money and getting terrific gas mileage."

The majority concludes a finder of fact could determine these statements are misrepresentations or are misleading to the public in view of evidence presented by Paduano (in a supplemental opposing summary judgment declaration) that unspecified Honda representatives told him (1) that hybrids are more dramatically affected by outside influences such as driving habits and air conditioning, and "require a particular driving style in order to be fuel efficient, and short trips penalize hybrid efficiency more so than regular cars" and (2) "you cannot drive in a normal manner in order to get the mileage," a normal manner being "[a]ccelerating with the flow of traffic, stopping with the flow of traffic, accelerating as by law you're supposed to [do] to get on the highway, being at highway speed at the time that you're entering the first lane." (Maj. opn., *ante*, at pp. 1471, 1472.) The majority also points to evidence of customer complaints about fuel economy, which "constitutes additional evidence that Honda's advertising claims may be misleading, since a number of other drivers who presumably drove their vehicles as they would conventional vehicles were also apparently unable to achieve mileage close to the EPA estimates . . . ." (Maj. opn., *ante*, at pp. 1472–1473.) The majority also concludes these advertising claims are not preempted by the EPCA.

---

[1] This sentence appears in the following paragraph: "I NEVER HAVE TO PLUG IT IN, RIGHT? That's correct—never. The charging system is completely self-sufficient so the powertrain automatically recharges the onboard batteries while you're driving. Just drive the Hybrid like you would a conventional car and save on fuel bills."

I. *Paduano's Advertising Claims Seek to Impose Duties
Relating to Fuel Economy Standards and Would Also
Impose Requirements upon Honda to Advertise Mileage
Estimates Different from EPCA Requirements*

"When the issues regarding federal preemption involve undisputed facts, it is a question of law whether a federal statute or regulation preempts a state law claim and, on appeal, we independently review a trial court's determination on that issue of preemption." (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1476 [38 Cal.Rptr.3d 653] (*Smith*); see also *In re Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10 [72 Cal.Rptr.3d 112, 175 P.3d 1170]; *Wholesale Electricity Antitrust Cases I & II* (2007) 147 Cal.App.4th 1293, 1304 [55 Cal.Rptr.3d 253].) " 'As to each state law claim, the central inquiry is whether the legal duty that is the predicate of the [claim] constitutes a requirement or prohibition of the sort that federal law expressly preempts.' " (*Smith*, at p. 1476.)

As the majority points out, the EPCA contains an express preemption clause: "When an average fuel economy standard prescribed under this chapter is in effect, a State or a political subdivision of a State may not adopt or enforce a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under this chapter." (49 U.S.C. § 32919(a).) Subsection (b) of that section further states: "Requirements Must Be Identical.—When a requirement under section 32908 of this title is in effect, a State or a political subdivision of a State may adopt or enforce a law or regulation on disclosure of fuel economy or fuel operating costs for an automobile covered by section 32908 only if the law or regulation is identical to that requirement." (49 U.S.C. § 32919(b).) Congressional intent is the touchstone, and thus these provisions guide the preemption analysis. (*Altria Group, Inc. v. Good* (2008) 555 U.S. ___ [172 L.Ed.2d 398, 129 S.Ct. 538] (*Altria*); *In re Farm Raised Salmon Cases, supra*, 42 Cal.4th at pp. 1087–1092; *Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 939 [63 Cal.Rptr.3d 50, 162 P.3d 569].)[2]

In opposition to Honda's motion for summary judgment, Paduano argued his claims were not preempted by Congress because they stemmed from the advertising and sale representations made in the marketing and service of the

---

[2] Given the significance of these statutory provisions to the analysis, I decline to follow or adopt the district court's analysis in *True v. American Honda Motor Co.* (C.D.Cal. 2007) 520 F.Supp.2d 1175 because that opinion is without any discussion or application of the scope of the EPCA's preemption clauses. As the majority observes, in assessing preemption, "deference should be paid to Congress's detailed attempt to clearly define the scope of preemption under the [EPCA]." (*In re Farm Raised Salmon Cases, supra*, 42 Cal.4th at p. 1092 [speaking to implied preemption analysis].)

vehicle. He pointed out that "Honda affirmatively represented, outside the EPA estimates, in the marketing brochure, that the vehicle would get 51 mpg." He also asserted, based on Honda's brochure, that Honda "represented that the subject vehicle could be driven like a conventional car and be fuel efficient before purchase . . . [and] [a]fter purchase, Honda told plaintiff that these vehicles require a 'particular driving style' to be fuel efficient."[3] Paduano also argued there was no preemption for affirmative misrepresentations and omissions under the CLRA; that "Honda's post sale disclaimer of the warranty is a violation of the CLRA, and a triable issue of fact."

On appeal, Paduano argues that "Honda's Brochure clearly raised an issue of material fact as to whether Honda's advertising materials were misleading or deceptive as to probably the most important reason consumers purchase Hybrids—the fuel economy." He argues his claims speak only to Honda's advertising of mileage, which is covered by but fails to comply with Federal Trade Commission requirements at 16 Code of Federal Regulations part 259. With regard to his specific CLRA and UCL claims and whether they are preempted, he argues, "The Brochure and the label are different documents. Only the latter is subject to preemption. *The Trial Court erred in failing to consider the Brochure which clearly states that Paduano would get 51 mpg (in two inch letters), while driving it like a conventional car.*" (Italics added.)

Paduano's false advertising claims are plainly grounded on the expectation that with conventional driving, his Honda Civic Hybrid would meet the EPA mileage estimate of 51 mpg (miles per gallon) set out in Honda's brochure (though Paduano's particular vehicle has an EPA mileage rating of 48 mpg, as the brochure makes clear). Indeed, on appeal, Paduano maintains the brochure inaccurately *inflates* the mileage from 48 to 51 without stating that the EPA is the source of the mileage figure or indicating the number is an estimate. In other words, Paduano claims Honda's brochure is false and/or misleading because it falsely suggests his vehicle would get the EPA mileage estimate of 51 mpg. I dispute the majority's characterization of Paduano's claims as involving the vehicle's driving characteristics or driving style because it ignores the thrust of Paduano's arguments. As I explain below, Paduano did not advance any such theory in his pleadings or discovery.

Because Paduano's sought-after relief would require that Honda change its advertising to either eliminate or reduce the EPA mileage estimate, or include

---

[3] In his opposing summary judgment declaration, Paduano stated: "Prior to purchase Honda told me that the subject vehicle got 51 mpg in the brochure. Honda told me it could be driven like a conventional car and get outstanding fuel economy." He also stated that after purchase, he learned hybrid vehicle estimates are inflated based on the test procedures, and "Honda failed to tell me that mileage and performance of the vehicle are dramatically effected use [*sic*] of the air conditioning, driving habits, windows up/down, and vehicle load, more than normal combustion engines."

additional disclosures relating to the EPA mileage estimate and his car's fuel economy, his state law false advertising claims fail under express preemption principles as imposing a legal obligation "related to fuel economy standards" (49 U.S.C. § 32919(a); see *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 384, 388–390 [119 L.Ed.2d 157, 112 S.Ct. 2031] [interpreting phrase, "related to a price, route, or service of an air carrier . . ." in preemption clause of Airline Deregulation Act as preempting "State enforcement actions [for deceptive practices] having a connection with, or reference to, airline 'rates, routes, or services' . . . ."]) or they fail because they would impose disclosure requirements concerning fuel economy that are not identical to the EPCA. (49 U.S.C. § 32919(b); e.g., *Riegel v. Medtronic, Inc.* (2008) 552 U.S. ___, ___, ___–___ [169 L.Ed.2d 892, 128 S.Ct. 999, 1003, 1006–1008] [holding New York common law tort claims constituted "requirements" under the Medical Device Amendments (MDA), and as such were preempted by MDA preemption provision barring any state " 'requirement [¶] . . . different from, or in addition to, any requirement applicable under this chapter' " and that " 'relates to the safety or effectiveness of the device . . .' "]; *Morrison v. Viacom, Inc.* (1997) 52 Cal.App.4th 1514, 1526 [61 Cal.Rptr.2d 544] [where Congress intends to preempt all state laws affecting a particular subject, it has employed language well suited to the task; statutes that expressly preempt state regulations that " 'relate to' a given subject matter or field are indicative of an expansive preemptive intent"].) It is untenable to interpret title 49 United States Code section 32919(a) as preempting only laws related to the Corporate Average Fuel Economy (CAFE) program, or so-called CAFE standards for vehicle fleets. The section is disjunctive ("related to fuel economy standards *or* average fuel economy standards" (49 U.S.C. § 32919(a), italics added)). Interpreting the section in this manner ignores the breadth of the phrase "related to" and also renders superfluous the phrase "fuel economy standards."

This conclusion as to preemption is not impacted by the fact that Paduano's claims are made under consumer protection laws. A presumption against preemption is characteristically applied where the field is one that the states have traditionally occupied and regulated, but such a presumption is not triggered when the state regulates in an area where there has been a history of significant federal presence. (*Wholesale Electricity Antitrust Cases I & II, supra,* 147 Cal.App.4th at p. 1305, quoting *Southern Cal. Edison Co. v. Public Utilities Com.* (2004) 121 Cal.App.4th 1303, 1311–1312 [18 Cal.Rptr.3d 435]; see also *Smith, supra,* 135 Cal.App.4th at p. 1475.) In my view, the EPCA and its corresponding federal regulations reflect a significant federal

presence with respect to the measurement and disclosure of automobile fuel economy estimates and standards, as well as the advertising concerning a new vehicle's fuel economy. (16 C.F.R. § 259 et seq. (2009); see *Brett v. Toyota Motor Sales, U.S.A., Inc.* (M.D.Fla., Sept. 15, 2008, No. 6:08-cv-1168-Orl-28GJK) 2008 WL 4329876 at pp. *6–*7.)[4] " 'Federal regulations may preempt state law just as fully as federal statutes.' " (*Smith*, 135 Cal.App.4th at p. 1475, fn. 6.) I undertake my preemption analysis without applying a presumption against preemption.

The United States Supreme Court's recent decision in *Altria, supra*, 555 U.S. ___ [172 L.Ed.2d 398] has no application to this case. *Altria* addressed whether particular state law false advertising claims under the Maine Unfair Trade Practices Act (the Maine Act) were expressly or impliedly preempted by an entirely different statute: the Federal Cigarette Labeling and Advertising Act (the Labeling Act; 15 U.S.C. § 1331 et seq.). The preemption clause at issue in *Altria* provides: " '[N]o requirement or prohibition *based on smoking and health* shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.' " (*Altria, supra*, at p. ___ [172 L.Ed.2d at p. 407], italics added.) In two prior cases,[5] the United States Supreme Court had narrowly construed this specific preemption provision, concluding "that the phrase 'based on smoking and health' modifies the

---

[4] As for out reliance on *Brett*, in particular, 16 Code of Federal Regulations part 259.2 (2009) requires every manufacturer or dealer of any new automobile who makes any express or implied advertising representations concerning the fuel economy of the vehicle to disclose the fuel economy estimates of the EPA and disclose the EPA as the source of those estimates. (16 C.F.R. § 259.2 (2009).) If an advertisement also contains a non-EPA fuel economy estimate or source, that estimate must be featured substantially less prominently than the EPA's estimates. (16 C.F.R. § 259.2, subd. (c) (2009).) "Citing unpublished federal opinions does not violate our rules. (Cal. Rules of Court, rule 8.1115.)" (*In re Farm Raised Salmon Cases, supra*, 42 Cal.4th at p. 1096, fn. 18, italics omitted.)

[5] *Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504 [120 L.Ed.2d 407, 112 S.Ct. 2608] (*Cipollone*), decided by a plurality of justices, and *Lorillard Tobacco Co. v. Reilly* (2001) 533 U.S. 525 [150 L.Ed.2d 532, 121 S.Ct. 2404]. (See *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1267, fn. 2 [63 Cal.Rptr.3d 418, 163 P.3d 106].) In *Cipollone*, the plurality found preempted the plaintiffs' failure to warn claims "insofar as it asserted that the tobacco companies' 'post-1969 advertising or promotions should have included additional, or more clearly stated, warnings.' " (*In re Tobacco Cases II*, at p. 1268, quoting *Cipollone*, at p. 524.) It did not preempt a failure to warn claim "insofar as that claim relied 'solely on [the tobacco companies'] testing or research practices or other actions unrelated to advertising or promotion.' " (*In re Tobacco Cases II*, at p. 1268, quoting *Cipollone*, at pp. 524–525.) The *Cipollone* court found preempted plaintiffs' fraud claim that the defendants " 'through their advertising, neutralized the effect of federally mandated warning labels,' because that theory was 'predicated on a state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking.' " (*In re Tobacco Cases II*, at p. 1269, quoting *Cipollone*, 505 U.S. at p. 527.)

state-law rule at issue rather than a particular application of that rule." (*Altria, supra,* at p. ___ [172 L.Ed.2d at p. 408].)

In *Altria,* the respondent consumers, who were cigarette smokers, had alleged the petitioners, Philip Morris USA, Inc., and its parent company, Altria, falsely marketed their cigarettes as being "light" and containing lower tar and nicotine so as to convey to consumers that the products were less harmful than regular cigarettes. (*Altria, supra,* 555 U.S. at p. ___ [172 L.Ed.2d at pp. 403–404].) They alleged petitioners violated the Maine Act by both fraudulently concealing information about unique design features of light cigarettes making their smoke more mutagenic, and affirmatively representing by use of the "light" and "lowered tar and nicotine" descriptors that their cigarettes would pose fewer health risks. (*Altria,* at p. ___ [172 L.Ed.2d at p. 404].) Applying the " 'fair but narrow reading' " of the Labeling Act's preemption clause as the *Cippollone* plurality had done (*Altria,* at p. ___ [172 L.Ed.2d at p. 408]), the court concluded the respondents' false advertising claims were not preempted because they were based on a "duty not to deceive as that duty is codified in the [Maine Act]," which has "nothing to do with smoking and health." (*Altria,* at p. ___ [172 L.Ed.2d at p. 408].)

*Altria* expressly distinguishes its analysis under the Labeling Act from other cases involving the type of broad preemption clause at issue in this case. The court emphasized that its decisions in *American Airlines, Inc. v. Wolens* (1995) 513 U.S. 219 [130 L.Ed.2d 715, 115 S.Ct. 817] (in turn relying on *Morales v. Trans World Airlines, Inc., supra,* 504 U.S. 374) and *Riegel v. Medtronic, supra,* 552 U.S. ___, respectively involved preemption provisions "much broader" than the Labeling Act's or the type of state law rule Congress had intended to preempt. (*Altria, supra,* 555 U.S. at p. ___ [172 L.Ed.2d at pp. 410–411].) Specifically, it noted that its conclusion in *Wolens* that the state law was preempted turned on the "unusual breadth" of the preemption provision: "We had previously held that the meaning of the key phrase . . . ' "*relating to* rates, routes, or services," ' is a broad one. [Citation.] . . . [W]e concluded that the phrase 'relating to' indicates Congress' intent to pre-empt a large area of state law to further its purpose of deregulating the airline industry. [Citation.] Unquestionably, the phrase 'relating to' has a broader scope than the Labeling Act's reference to rules 'based on' smoking and health; whereas 'relating to' is synonymous with 'having a connection with,' [citation], 'based on' describes a more direct relationship . . . ." (*Altria,* at p. ___ [172 L.Ed.2d at p. 411], fn. omitted.) Similarly, the *Altria* court observed that in *Riegel,* 522 U.S. ___, the plaintiff's products liability claims "fell within the core of the MDA's

pre-emption provision because they sought to impose different requirements on *precisely those aspects* of the device that the FDA had approved" and thus the *Riegel* plaintiff's common law products liability claims "unquestionably sought to enforce 'requirement[s] relating to safety or effectiveness' under the MDA." (*Altria*, at p. ___ [172 L.Ed.2d at p. 412], italics added.)

*Altria* and *Cipollone*, on which *Altria* is based, are not fairly read to preclude federal preemption of Paduano's false advertising claims under the EPCA's broad preemption provision merely because his claims may be characterized as based on a duty not to deceive, codified by California's UCL. Rather, as our state's high court has recognized, under the *Cipollone* analysis applied by the court in *Altria*, one must examine each theory advanced by Paduano "to determine whether, *as applied in the particular case*, the claim based on that theory would impose a duty" related to fuel economy standards. (See *In re Tobacco Cases II, supra*, 41 Cal.4th at pp. 1271–1272.) Here, as I have explained, Paduano's false advertising claims (which are at bottom based on allegations that Honda failed to disclose "defects" relating to fuel economy) seek to impose duties on Honda to alter its advertising with respect to its disclosure of fuel economy standards—precisely the matter governed by the EPCA. His claims fall directly within the EPCA's preemptive reach.

## II. *Plaintiff's Pleadings Do Not Encompass the Theories Relied upon on Appeal*

Even assuming that Paduano's claims for false advertising under the UCL and CLRA are not preempted, I would affirm summary judgment of those claims on the following alternative grounds.

All of Paduano's causes of action, including those under the UCL and CLRA, are based on the claim that his 2004 Civic Hybrid had "defects," which Paduano defines as "defects with the engine, defects with the fuel system, defects causing the vehicle to get reduced mileage." Paduano's allegations in support of his CLRA and UCL causes of action do not specify the nature of the false or deceptive representations, other than to apparently say Honda did not disclose defects in the vehicles. His CLRA cause of action appears to rely exclusively on his prior allegations as to a "defect" in the vehicle relating to reduced mileage. In his UCL cause of action, plaintiff alleges essentially that Honda publicized or advertised a defective product without disclosing that it was defective; or made false statements failing to "inform the public of known defects concerning the subject vehicle . . . ."

The Honda brochure at issue was subsequently addressed in plaintiff's deposition. When asked what about the brochure was inaccurate, he stated,

"The mileage representation on how the car will perform." Paduano also testified that the brochure influenced his decision to buy the hybrid Civic; that "[i]t supported the information that I had seen before I got to the dealership . . . . [¶] . . . [¶] *That it was going to get 47 to 48 miles per gallon.*" (Italics added.) Paduano denied in his deposition that "all the representations from American Honda concerning the gas mileage on the Civic Hybrid is the same as what is contained on the [window] sticker"; however, when asked whether he had seen any information different from what was contained in the window sticker, he answered, "I can't recall." He also testified in his deposition about the statements made to him by Honda service techs and service managers concerning the driving style one must use "in order to get the mileage."[6]

Under settled summary judgment standards, the court reviewing the propriety of summary judgment is limited to assessing those theories alleged in the plaintiff's pleadings. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252 [32 Cal.Rptr.2d 223, 876 P.2d 1022]; *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648 [32 Cal.Rptr.3d 266]; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253–1258 & fn. 7 [78 Cal.Rptr.3d 372].) " 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues: the function of the affidavits or declarations is to disclose whether there is any triable issue of fact within the issues delimited by the pleadings.' " (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508].) Thus, a moving party's summary judgment burden only " 'requires that he or she negate plaintiff's theories of liability as *alleged in the complaint.* A "moving party need not '. . . refute liability on some theoretical possibility not included in the pleadings.' " ' " (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 332 [40 Cal.Rptr.3d 313].) A " 'plaintiff cannot bring up new, unpleaded issues in his or her opposing papers. . . .' [Citations.] A summary judgment . . . motion that is otherwise sufficient 'cannot be successfully resisted by counterdeclarations which create immaterial factual conflicts outside the scope of the pleadings.' [Citation.] Thus, a plaintiff wishing 'to rely upon unpleaded theories to defeat summary judgment' must move to amend the complaint before the hearing." (*Oakland Raiders*, at p. 648; see also *County of Santa Clara*, at p. 333; *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1664 [42 Cal.Rptr.2d 669]; *Laabs. v. City of Victorville, supra*, 163 Cal.App.4th at p. 1257.)[7]

---

[6] These comments amount to nothing more than the federally mandated statement in Honda's label that " 'ACTUAL MILAGE will vary with options, driving conditions, driving habits and vehicle[']s condition.' " (See maj. opn., *ante*, at p. 1459.)

[7] In *Laabs v. City of Victorville, supra*, 163 Cal.App.4th 1242, the court stated that "factual issues presented in opposition to a motion for summary judgment should be considered if the controlling pleading, construed broadly, encompasses them. In making this determination,

Here, Paduano is not entitled to raise claims based on the asserted "driving style" misrepresentations made within Honda's brochure because they were neither specifically alleged in his complaint nor reasonably encompassed in its allegations. Nor were such theories of false advertising expressly raised by Paduano at his deposition (at least insofar as the record shows), as he testified only that he relied on the brochure to reach his belief that he would be getting 47 or 48 mpg in keeping with the EPA estimate. It was not until Paduano filed his summary judgment opposition papers that he hinted at the theory that the misleading advertisement is Honda's brochure statement that one can drive the hybrid "like a conventional car" and still "save on fuel bills" and/or get outstanding mileage. Honda pointed out in its reply papers—and I agree—this was a new, unpleaded theory. It should not be warmly embraced by the majority, but disallowed.

Further, Paduano's claim under the CLRA raised in his summary judgment opposing papers was only that Honda's postsale disclaimer of the warranty was a violation of the CLRA and thus not preempted. Paduano did not raise Honda's "driving style" advertisements as false or misleading under the CLRA, and he cannot do so for the first time on appeal. As for the UCL, Paduano's opposing summary judgment papers suggest that the only advertising claims he contests are Honda's assertions as to mileage in its brochure, not driving style. Paduano argues, "When Honda decided to advertise mileage claims separate and apart from the window sticker, it had an obligation to be truthful. When Honda stepped outside the four corners of the window sticker it lost even the pretense of preemption." Plaintiff's deposition testimony regarding the brochure, even construed in his favor, was that the brochure led him to believe he would receive 47 or 48 mpg while driving the car conventionally.

In view of the state of the pleadings and discovery, there is no basis to hold that Honda failed to meet its threshold summary judgment burden as to these advertising claims when Paduano did not identify any particular advertisement that he asserted was false and/or misleading to a reasonable consumer. The court in *Laabs v. City of Victorville* explained, "To allow an issue which has not been [pleaded] to be raised in opposition to a motion for summary

courts look to whether the new factual issues present different theories of recovery or rest on a fundamentally different factual basis." (*Id.* at p. 1257.) Here, Paduano's opposing summary judgment arguments pertaining to Honda's assertedly false or misleading advertising are not at all fairly encompassed in his complaint, which alleged Honda's failure to disclose a "defect" causing the vehicle to get reduced gas mileage. Rather, in my view, Paduano's opposing arguments raise fundamentally different factual grounds for his UCL and CLRA causes of action and should have been the subject of a motion for leave to amend. (163 Cal.App.4th at p. 1257.) In moving for summary judgment, Honda was not required to address factual theories that were not encompassed in Paduano's operative complaint. (*Id.* at p. 1257, fn. 6 [in the absence of some request for amendment there is no occasion to inquire about possible issues not raised by the pleadings].)

judgment in the absence of an amended pleading, allows nothing more than a moving target. For Code of Civil Procedure section 437c to have procedural viability, the parties must be acting on a known or set stage." (*Laabs v. City of Victorville, supra,* 163 Cal.App.4th at p. 1258, fn. 7.) Honda had no reason to challenge Paduano's false advertising theories when it had no notice Paduano was relying on such claims. "The complaint circumscribes the claims and theories the defendants must meet on a motion for summary judgment." (*Ibid.*)

III. *Paduano's Evidence Does Not Raise a Triable Issue of Material Fact as to Whether the Alleged Brochure Representations Are Likely to Deceive a Reasonable Consumer*

Unless an advertisement is directed to a particularly susceptible audience or specific group of consumers, a plaintiff claiming deceptive advertising under the CLRA and UCL bears the burden of proving that the defendant's conduct or advertising is likely to deceive a "reasonable consumer." (*Benson v. Kwikset Corp.* (2007) 152 Cal.App.4th 1254, 1275 [62 Cal.Rptr.3d 284]; *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 682 [38 Cal.Rptr.3d 36]; *Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 806 [49 Cal.Rptr.3d 555]; *Consumer Advocates v. Echostar Satellite Corporation* (2003) 113 Cal.App.4th 1351, 1360 [8 Cal.Rptr.3d 22] (*Echostar*) [reasonable consumer standard applied to CLRA claims]; *Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 506–507 [129 Cal.Rptr.2d 486] [reasonable consumer standard applied to plaintiff's UCL claim].) A reasonable consumer is " 'the ordinary consumer acting reasonably under the circumstances' [citation], and 'is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture . . . .' " (*Colgan,* at p. 682.) " 'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." (*Lavie v. Procter & Gamble Co.,* at p. 508.)

As the majority notes, under both the CLRA and UCL, " '[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable.' " (*Aron v. U-Haul Co. of California, supra,* 143 Cal.App.4th at p. 807, quoting *Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325, 332–333 [74 Cal.Rptr.2d 55]; see also *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 51 [134 Cal.Rptr.2d 420] [statement in connection with product or service must be untrue or, even if true, misleading]; *Brockey v. Moore* (2003) 107 Cal.App.4th 86, 99 [131 Cal.Rptr.2d 746].)

Paduano's summary judgment evidence does not squarely address the standard at issue: whether the Honda brochure assertions are matters upon which a reasonable consumer could be expected to rely in determining whether to purchase the vehicle, and whether an "appreciable number of reasonably prudent purchasers," and not just isolated consumers, were likely to be deceived or misled by the advertisement. (See, e.g., *Brockey v. Moore*, *supra*, 107 Cal.App.4th at p. 99; *Lavie v. Procter & Gamble Co.*, *supra*, 105 Cal.App.4th at p. 508.) While the record contains evidence of customer complaints, Honda emphasized that the complaints concerning gas mileage constituted only 0.7 percent of 2004 Honda Civic Hybrid owners in California, and there is nothing indicating whether these complaints related to the "driving style" assertions in Honda's brochure.[8]

In any event, the Honda brochure's assertion as to driving the hybrid conventionally and saving on fuel bills is true and basically definitional. By its nature, a hybrid vehicle "save[s] on fuel" (i.e., gasoline) because there are times while driving that the gasoline engine cuts off. The brochure itself points out that the electric motor adds its power to the output of the gasoline engine while accelerating, and also that, "At a stop, the engine cuts off automatically under most conditions to reduce fuel use and emissions, thanks to the idle-stop feature. It restarts itself when you're ready to go." Paduano himself admitted in his deposition that any car's gas mileage would decrease with aggressive driving. His own deposition testimony bolsters the conclusion that Honda's suggestion about driving the hybrid Civic like a conventional car is not likely to mislead a reasonable consumer.

Nor do the brochure's assertions, in context, create false and misleading impressions to the reasonable consumer. The majority's analysis unreasonably isolates the challenged sentence from the remainder of the brochure. (See fn. 1, *ante*.) Looking to the overall net impression of Honda's brochure (see *Brockey v. Moore, supra*, 107 Cal.App.4th at p. 100 [the primary evidence in a false advertising case is the advertising itself]; e.g., *F.T.C. v. Gill* (C.D.Cal. 1999) 71 F.Supp.2d 1030, 1043), the statement "Just drive the [car] like you would a conventional car and save on fuel bills" relates not to driving style (i.e., aggressive versus nonaggressive driving) but to the absence of any need to plug the car into an outlet. Nevertheless, the majority's theory—that the brochure is misleading because it suggests a person can drive the car in a "normal" or conventional manner and still get fuel economy close to the EPA estimate (a theory of deceptive advertising that was not suggested in

---

[8] In its summary judgment reply papers, Honda noted that it had disclosed in discovery responses that as of March 17, 2006, of 5,971 2004 Honda Civic Hybrids sold in California, only 44 owners (0.7 percent of owners) communicated with Honda concerning gas mileage; five of which pursued its certified arbitration program, five made a request for repurchase, and 34 made a general inquiry.

Paduano's pleadings)—necessarily depends on plaintiff's reliance on the accuracy of the EPA estimates set forth in the brochure. But, as the majority holds (maj. opn., *ante*, at pp. 1468, fn. 9, 1470), such a claim is not actionable!

## IV. *The Alleged Misleading Advertisements Are Unspecific and Nonactionable Puffery*

I would alternatively grant summary judgment in Honda's favor on grounds the advertising statements at issue are mere unspecific, nonfactual assertions constituting nonactionable puffery.[9]

In *Echostar, supra*, 113 Cal.App.4th 1351, the plaintiff contended under the UCL and CLRA that the defendant providers of satellite television services made false and misleading statements in their brochure, namely, that their system provided " 'crystal clear digital video,' 'CD-quality' audio, and an on-screen program guide which would allow a consumer to view the schedule 'up to 7 days in advance,' and that 50 channels would be provided." (*Id.* at p. 1353.) The trial court granted summary judgment in the defendant's favor. (*Id.* at p. 1358.)

Upholding the trial court's reliance on the reasonable-consumer standard (*Echostar, supra*, 113 Cal.App.4th at p. 1360), the Court of Appeal found no triable issue of material fact on the plaintiff's claim as to whether the representations about crystal clear digital video or CD-quality audio constituted misrepresentations about the quality or characteristics of goods or false advertising in violation of the CLRA, or were untrue, misleading or fraudulent under the UCL. (*Echostar*, at p. 1361.) The court stated: " 'Crystal clear' and 'CD quality' are not factual representations that a given standard is met. Instead, they are boasts, all-but-meaningless superlatives, similar to the claim that defendants 'love comparison,' a claim which no reasonable consumer would take as anything more weighty than an advertising slogan." (*Ibid.*) The court noted that the statements are "akin to 'mere puffing,' which under long-standing law cannot support liability in tort." (*Id.* at p. 1361, fn. 3, citing *Hauter v. Zogarts* (1975) 14 Cal.3d 104, 111 [120 Cal.Rptr. 681, 534 P.2d 377].) The court explained that the "common experience of television watchers since the beginning of television is that no television delivery system is perfect. Broadcast is subject to interference and reception problems. Cable

---

[9] Concededly, Honda does not make this argument in its summary judgment papers or on appeal. That is because Paduano did not identify Honda's advertising statements in his complaint. Honda was not required to address factual theories not alleged in, or reasonably encompassed by, the pleadings. (*Laabs v. City of Victorville, supra*, 163 Cal.App.4th at p. 1257, fn. 6.) Under the circumstances, I would afford the parties an opportunity to brief this issue. (Code Civ. Proc., § 437c, subd. (m)(2).)

goes out, usually at inconvenient times. Satellite systems, as plaintiffs have demonstrated, have their own problems." (*Echostar*, at p. 1361.)

The Ninth Circuit has held that the puffing doctrine applies to " 'claims [which] are either vague or highly subjective.' [Citation.] The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. '[A]dvertising which merely states in general terms that one product is superior is not actionable.' [Citation.] 'However, misdescriptions of specific or absolute characteristics of a product are actionable.' " (*Cook, Perkiss & Liehe v. N. Cal. Collection Serv.* (1990) 911 F.2d 242, 246.)

In the automobile promotional advertising context, other courts have found statements that " 'It won't spoil the fun knowing that the Samurai handles differently than any ordinary passenger car'; and, the Suzuki 4x4 'has a nifty, go-getter engine, . . . and all the goodies of 4-wheel drive' " to be subjective descriptions not qualifying as a fraudulent representation of fact. (*Connick v. Suzuki Motor Co.* (1995) 275 Ill.App.3d 705 [212 Ill.Dec. 17, 656 N.E.2d 170, 183], reversed in part on other grounds (1996) 174 Ill.2d 482 [221 Ill.Dec. 389, 675 N.E.2d 584], and also disagreed with on other grounds in *Chaurasia v. General Motors Corp.* (Ct.App. 2006) 212 Ariz. 18 [126 P.3d 165, 171]; see also *Gen. Motors Anti-Lock Brake Products Liability Lit.* (E.D.Mo. 1997) 966 F.Supp. 1525, 1531 [GM advertisement that crash-avoidance systems such as anti-lock brakes, " ' "[are] 99 percent more effective than protective systems" ' " such as air bags, because protective systems are rarely used, while " ' "drivers frequently brake aggressively or make sudden road maneuvers to avoid hazards or collisions" ' " and " '[a] driver is 100 times more likely to benefit from a vehicle's crash-avoidance capabilities (such as anti-lock brakes) than from its crash-survival capabilities (such as air bags)' " held to be puffing; court held "such comparative claims, often involving large numbers, are puffing because a consumer cannot reasonably believe there is a test behind the claim"].)

Honda's advertising statements as to driving the hybrid like a conventional car and saving on fuel bills or getting "terrific" gas mileage without doing anything "special" are nebulous, nonspecific assertions similar to those in the above-referenced cases. This is true even to the extent Honda's advertisement attempts to compare the hybrid Civic to an unspecified conventional car. Such a comparison is puffery because it is "not falsifiable and therefore is not informative." (*August Storck K.G. v. Nabisco, Inc.* (7th Cir. 1995) 59 F.3d 616, 618 ["A 'comparison' to a mystery rival is just puffery; it is not falsifiable and therefore is not informative."].)

Because the advertising statements assertedly placed in issue by Paduano are not actionable as a matter of law, I would affirm the summary judgment in Honda's favor.

A petition for a rehearing was denied February 2, 2009.